UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANDREW SAWYER,            )
                          )
         Plaintiff        )
                          )
v.                        )    Civil No. 10-64-P-S
                          )
TD BANK US HOLDING COMPANY, )
                          )
         Defendant        )

*MEMORANDUM DECISION ON MOTION TO AMEND,
MOOTING MOTION TO DISMISS*

The plaintiff filed the instant suit on February 12, 2010, bringing four claims in connection with the non-payment of an allegedly promised severance package upon his separation from employment at TD Banknorth Wealth Management Group ("TD Group") in 2007. *See* Complaint and Claim for Benefits Pursuant to an ERISA Plan ("Complaint") (Docket No. 1). These consisted of a claim for benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 (Count One), claims of breach of fiduciary duty (Count Two) and equitable or promissory estoppel (Count Three), and a claim of failure to provide a copy of a Summary Plan Description ("SPD") (Count Four). *See id.*

On March 22, 2010, the defendant filed a motion to dismiss the complaint in its entirety on the ground that the plaintiff had named the wrong entity as a defendant and to dismiss Counts Two and Three on the basis that those state-law claims are preempted by ERISA. *See* Defendant's Motion To Dismiss Plaintiff's Complaint ("Motion To Dismiss") (Docket No. 7) at 1-2. On April 22, 2010, the plaintiff filed both an opposition to the Motion To Dismiss and a motion to amend his complaint to (i) add new defendants, (ii) request a determination from the court as to whether the plan at issue is an ERISA or non-ERISA plan, (iii) assert three new state-

1

law claims, for breach of contract, negligent misrepresentation, and fraud, in the event that the plan is determined not to fall under ERISA, and (iv) revise the nature of his claim of equitable or promissory estoppel.  *See* Plaintiff's Opposition to Defendant's Motion To Dismiss ("Dismiss Opposition") (Docket No. 12); Plaintiff's Motion To Amend Complaint ("Motion To Amend") (Docket No. 11); *see also* Plaintiff's Reply in Support of His Motion To Amend Complaint ("Amend Reply") (Docket No. 16) at 2-3; Plaintiff's First Amended Complaint ("Proposed Amended Complaint") (Docket No. 13) ¶¶ 31, 45-79.  The Proposed Amended Complaint retains causes of action pursuant to ERISA for failure to pay benefits or provide a copy of the SPD and drops the claim of breach of fiduciary duty.  *See* Proposed Amended Complaint ¶¶ 45-79.

The defendant partially opposes the proposed amendment on the ground of the asserted futility of (i) the request that the court determine whether the plan is an ERISA or non-ERISA plan, the plan in its view qualifying as a matter of law as an ERISA plan, (ii) the assertion of the three new state-law claims, which in its view are preempted by ERISA, (iii) the plaintiff's asserted failure to state a cognizable claim pursuant to ERISA of equitable or promissory estoppel, and (iv) the naming as defendants of two entities that cannot be held liable pursuant to ERISA.  *See* Defendant's Opposition to Plaintiff's Motion To Amend Complaint ("Amend Opposition") (Docket No. 14) at 3-10.

The plaintiff concurs that the two entities in question should be dismissed, but seeks their dismissal without prejudice.  *See* Amend Reply at 1-2.  He continues to press for inclusion in his amended complaint of his state-law causes of action, arguing that the plan might qualify as a non-ERISA plan and, in any event, that determination is a complex one that his counsel was unable to brief adequately in the two-day period afforded to file a reply brief.  *See id*. at 2-3.

For the reasons that follow, I grant in part and deny in part the Motion To Amend and direct that the Clerk's Office strike the amended complaint filed at Docket No. 13 and that the plaintiff filed an amended complaint consistent with my ruling on or before August 2, 2010. That disposition moots the Motion To Dismiss.

## I. Applicable Legal Standards

The plaintiff filed an amended complaint separately on the docket without labeling it as "proposed," *see* Docket No. 13, taking the view that he was entitled pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) to amend his pleading as a matter of course, having done so before a responsive pleading was filed, *see* Motion To Amend at 1. The defendant rejoined, and the plaintiff subsequently concurred, that he must seek leave of court to amend his complaint, having failed to amend it within 21 days after service of the Motion To Dismiss. *See* Amend Opposition at 1 n.1; Amend Reply at 1 & n.1; Fed. R. Civ. P. 15(a)(1)(A) (plaintiff may amend complaint once as a matter of course either "21 days after service of a responsive pleading *or* 21 days after service of a motion under Rule 12(b) . . ., whichever is *earlier*.") (emphasis added).

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has clarified:

> The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case. If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged

3

> by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory. If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

*Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted); *see also, e.g., Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (same).

In this case, the more liberal standard of assessing futility applies, no scheduling order as yet having issued.

## II. Discussion

### A. Challenge to Naming of Two Entities as Defendants

The Complaint, styled as an action pursuant to ERISA, names only TD Bank US Holding Company ("TD Bank") as a defendant. *See* Complaint at 1. The defendant argued, in its Motion To Dismiss, that it is not a proper defendant because it does not qualify as one of the three types of entities that the First Circuit has deemed proper ERISA defendants to the extent that such entities control the administration of plans: benefit plans, plan administrators, or employers. *See* Motion To Dismiss at 5.

In response, the plaintiff proposed to amend his complaint to name not only TD Bank but also TD Banknorth, Inc., a/k/a Banknorth's Change of Control Protection Plan, TD Group, and Banknorth N.A. *See* Proposed Amended Complaint at 1. The defendant opposed the retention of TD Bank and the addition of TD Group, reiterating that the former is not a proper ERISA defendant and asserting that the latter is simply a division of TD Banknorth, N.A., not a separate

4

legal entity. *See* Amend Opposition at 9. The plaintiff responds that TD Bank and TD Group "should be dismissed from this matter as defendants without prejudice." Amend Reply at 2. I do not reach the question of whether TD Bank should be dismissed, with or without prejudice. TD Group cannot be dismissed, having never been named, but merely *proposed* to be named, as a defendant. Instead, I direct the plaintiff to omit both TD Bank and TD Group from among the defendants named in his amended complaint. In none of the papers filed in respect to either the Motion To Dismiss or the Motion To Amend has he articulated a rationale for retaining TD Bank or adding TD Group as a named defendant in this case.[1] Should he wish to offer such a rationale, he is free to file a new motion to amend his complaint to add one or both of those entities.

### B. Challenge to Claims Based on Non-ERISA Plan Status

In his Proposed Amended Complaint, the plaintiff alleges for the first time that the benefit plan in question, the Banknorth Group Inc. Change in Control Protection Plan ("Plan"),[2] is "*purported* to be an employee benefit plan covered by [ERISA,]" Proposed Amended Complaint ¶ 6 (emphasis in original), asserting, "It is unclear and will need to be determined by this Court whether The Plan is an ERISA plan or is a Non-ERISA plan[,]" *id*. ¶ 31. In addition to two claims brought pursuant to ERISA, lest the Plan be determined to be an ERISA plan, he sets forth three new "non-ERISA plan" state-law claims, lest the Plan be determined not to be an ERISA plan. *See id*. ¶¶ 45-70. The defendant argues, and I agree, that all claims predicated on the Plan's asserted non-ERISA plan status are futile because the Plan qualifies as an ERISA plan as a matter of law. *See* Amend Opposition at 3-8.

---

[1] In addition, consistent with the defendant's representation, the Proposed Amended Complaint describes TD Group as "a division of defendant Banknorth[.]" Proposed Amended Complaint ¶ 3.
[2] The Proposed Amended Complaint words the name of the Plan slightly differently. *See* Proposed Amended Complaint ¶ 6. I have used the name set forth on a copy of the Plan that is attached to that complaint. *See* Plan (Docket No. 13-1), attached to Proposed Amended Complaint.

In so determining, I have considered but rejected the plaintiff's suggestion that his counsel was afforded inadequate time to respond to the defendant's position. *See* Amend Reply at 3. While it is true that the court afforded counsel only two days after the filing of the response to file his reply, having accelerated the deadlines for both filings, his counsel adequately argued his position, adverting to and relying on a leading case, *O'Connor v. Commonwealth Gas Co.*, 251 F.3d 262 (1st Cir. 2001). *See id.* at 2-3. What is more, the matter is susceptible to resolution as a matter of law based on whether the terms of the Plan qualify it as a non-ERISA or ERISA plan under relevant caselaw, including *O'Connor*. Additional briefing would not have changed the result.

As the First Circuit has stated, the statutory language of ERISA is unhelpful in determining whether a plan does, or does not, qualify as an ERISA plan. *See, e.g., O'Connor*, 251 F.3d at 266. Hence, it has "relied on case law to discern when a benefit program constitutes an ERISA plan." *Id*. By the light of that caselaw, in particular the leading Supreme Court case, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), the First Circuit has concluded that "[i]t is by gauging the level of employer oversight . . . that the 'plan' determination must be made." *Id*. It has elaborated:

> In evaluating whether a given program falls under ERISA, we have looked to the nature and extent of an employer's benefit obligations. Those obligations are the touchstone of the determination: if they require an ongoing administrative scheme that is subject to mismanagement, then they will more likely constitute an ERISA plan; but if the benefit obligations are merely a one-shot, take-it-or-leave-it incentive, they are less likely to be covered. Particularly germane to assessing an employer's obligations is the amount of discretion wielded in implementing them. Where subjective judgments would call upon the integrity of an employer's administration, the fiduciary duty imposed by ERISA is vital. But where benefit obligations are administered by a mechanical formula that contemplates no exercise of discretion, the need for ERISA's protections is diminished.

*Id*. at 266-67 (citation and internal quotation marks omitted).

In his Proposed Amended Complaint, the plaintiff alleges, *inter alia*, that:

1. He became employed as a portfolio manager with TD Group in December 2000. *See* Proposed Amended Complaint ¶ 9.

2. In approximately 2005 or early 2006, TD Banknorth, Inc. ("Banknorth") underwent a reorganization incidental to its purchase by another entity. *See id.* ¶ 10.

3. On multiple occasions during the fall of 2006 and into 2007, his direct supervisor and other senior officers and managers of Banknorth represented to him that, pursuant to the reorganization, his job was going to be either eliminated or relocated to the greater Boston area. *See id.* ¶¶ 11-12.

4. On multiple occasions, his direct supervisor represented to him that Banknorth would present three options to him: (i) to retrain for a different job within the company, (ii) to relocate to the greater Boston area, or (iii) to cease employment with Banknorth and accept a severance package. *See id.* ¶ 13.

5. On February 6, 2007, Banknorth produced a report that confirmed that his position in Portland was being eliminated. *See id.* ¶ 17.

6. His direct supervisor advised him to submit a letter announcing his termination and to make a request for a severance package. *See id.* ¶ 18. On February 8, 2007, he submitted a letter to Banknorth announcing his separation from Banknorth effective on February 23, 2007, and requesting severance. *See id.* ¶ 19. On February 20, 2007, his direct supervisor informed him that his position at Banknorth would be filled in Concord, New Hampshire, and the employee grade level would be lowered, meaning the compensation would be lowered, as well. *See id.* ¶ 20. On February 20, 2007, his employment position with Banknorth was eliminated in

Portland. *See id*. ¶ 21. His last day of employment with Banknorth was February 23, 2007. *See id*. ¶ 23.

7. On February 25, 2007, he received a letter from legal counsel from Banknorth denying his claim for a severance package and specifically denying that any Banknorth representative had notified him that his job was being relocated or his position with Banknorth had been or would be eliminated or advised him that he was being terminated, offered him a severance package, or even discussed taking such employment actions. *See id*. ¶ 28.

8. Commencing on March 20, 2007, and at all times since then, the defendants have asserted that his employment termination and/or severance issues are controlled by the Plan, that he is not entitled to benefits under the Plan, and that the Plan is an ERISA plan. *See id*. ¶ 24.

9. On March 20, 2007, he was provided for the first time with a copy of the Plan and the SPD. *See id*. ¶¶ 29-30.

10. On April 13, 2007, he sent a claim for benefits to Banknorth that was denied on June 21, 2007. *See id*. ¶ 36. He appealed that denial on September 10, 2007. *See id*. ¶ 37. The Plan administrator denied his appeal on November 15, 2007. *See id*. ¶ 38.

11. His position with TD Bank was eliminated, downgraded, and relocated more than 50 miles prior to his last day of employment with TD Bank. *See id*. ¶ 49.

The Plan, as amended and restated as of July 22, 2003, states that its purpose is to "attract and retain selected employees of Banknorth Group, Inc. . . . and its affiliates" and to "encourage key employees to continue dedicated, loyal and productive employment . . . during periods of possible corporate transactions, such as mergers, combinations and acquisitions that may result in a Change in Control of the Company by providing reasonable compensation and a degree of financial protection against the consequences of a Change in Control." Plan, Article One, at 1.

The Plan provides that, after an initial three-year term, it is to be automatically renewed annually unless, at least six months prior to its then-scheduled expiration, the Board, by majority action, determines not to extend it. *See id*., Article Two, at 1.

> Article Four of the Plan provides:
>
> Any Eligible Employee whose employment with the Group is terminated during a Period of Protected Employment (x) by the Company without Cause or (y) by the Eligible Employee for Good Reason shall be entitled to (i) payment of all compensation and benefits accrued through the date of termination (including, but not limited to, base salary and Incentive Compensation) and (ii) a Severance Payment (to be paid in lump sum within twenty (20) business days after the date of termination of employment) and (iii) Severance Period Coverage.

*Id*., Article Four, at 5. The Plan defines "Cause" and "Good Reason" as follows:

> "Cause" means, with respect to an Eligible Employee, the occurrence of any one or more of the following: (i) commission of fraud, embezzlement, gross insubordination or material breach of his or her employment obligations; (ii) conviction of, or the entry of a plea of <u>nolo</u> <u>contendere</u> to, any felony or other crime which either (a) was intended to result in his or her enrichment at the expense of the Group or any member thereof, or (b) has resulted in injury to the business reputation of the Group or any member thereof; (iii) the willful and repeated refusal to perform and discharge his or her duties, responsibilities or obligations as an employee of the Group (other than by reason of disability or death); or (iv) commission of any act of willful misconduct that (a) is intended to result in substantial personal enrichment of the Eligible Employee at the expense of the Group or any member thereof or (b) has a material adverse impact on the business or reputation of the Group or any member thereof (such determination to be made by the Board in the good faith exercise of its reasonable judgment).
>
> ***
>
> "Good Reason" means, with respect to an Eligible Employee, the existence of circumstances or the occurrence of the events during a Period of Protected Employment that constitute "Good Reason" for termination as specified in Schedule I, as in effect on the date of the Change in Control giving rise to the Period of Protected Employment.

*Id*., Article Three, at 2-3.

"Good reason" varies according to an employee's level. *See* Schedule I to Plan. The plaintiff alleges that, for employees at his level, "good reason" consists of "[i]mposition of any

9

material reduction in base salary or aggregate benefits" or "[r]equired relocation of principal place of employment to a location (x) more than 50 miles from residence[.]" Proposed Amended Complaint ¶ 34 (emphasis omitted); *see also* Schedule I to Plan. The plaintiff alleges that "good reason," as defined in the Plan, existed for his resignation. *See* Proposed Amended Complaint ¶¶ 49-52.

The Plan provides: "The Company's obligation to pay Change in Control Benefits in accordance with the terms of this Plan is absolute and unconditional." Plan, Article Nine – Payment Obligations Absolute, at 7.

The plaintiff argues that the Plan is a non-ERISA plan in that it provides severance benefits to eligible employees under circumstances that are rigidly defined within the Plan. *See* Amend Reply at 2. He emphasizes that (i) the Plan provides a one-time award of benefits in the event of separation from the employer, (ii) the amount of such benefits is set forth by a schedule that contemplates no exercise of discretion, (iii) the term "Eligible Employee" is rigidly defined and contemplates no exercise of discretion, and (iv) the Plan goes so far as to specifically state that the employer has no discretion in administering it, terming the company's obligation to pay benefits in accordance with its terms "absolute and unconditional." *See id*. at 3.

Nonetheless, as the defendant notes, the United States District Court for the District of Massachusetts, carefully applying *Fort Halifax* and First Circuit precedent, held that a plan almost identical that at issue here was an ERISA plan. *See* Amend Opposition at 7-8; *Nadworny v. Shaw's Supermarkets, Inc.*, 405 F. Supp.2d 124 (D. Mass. 2005).

The plan in *Nadworny*, like the instant Plan, provided for a one-time lump-sum payment of severance benefits to eligible employees following the occurrence of a "change in control," but only in instances in which those employees' employment was terminated by the company

without cause or by the employee for good reason. *See Nadworny*, 405 F. Supp.2d at 128, 132. Nadworny, like the plaintiff in this case, claimed that he had been wrongly denied benefits despite seemingly qualifying under the plan by virtue of his resignation for "good reason." *See id*. at 128-29 (plaintiff asserted that he had resigned for "good reason," namely, a material diminution in his title, duties, and responsibilities and a material reduction or adverse change in his benefit plans).

The *Nadworny* court acknowledged that the plan provided for a single lump-sum severance payment, the amount of which was calculated in a straightforward manner, a circumstance that normally counsels against characterization as an ERISA plan. *See id*. at 132; *see also, e.g., Fort Halifax*, 482 U.S. at 12 (Maine statute that merely required employers to make one-time, lump-sum payment to employees at the time plant closed did not implicate ERISA); *O'Connor*, 251 F.3d at 267-68 (severance bonus program did not qualify as ERISA plan when it provided for one-time, lump-sum payment based on tenure, with method of calculation of bonus spelled out; "Though a 'years of service' standard necessarily requires individualized determinations, such assessments do not implicate ERISA unless they are based on non-mechanical, subjective criteria that could in their application be subject to employer abuse.") (citations omitted); *Belanger v. Wyman-Gordon Co*., 71 F.3d 451, 455 (1st Cir. 1995) (company's early retirement offers did not qualify as ERISA plans when each "hinged on a purely mechanical determination of eligibility and, if accepted, required no complicated administrative apparatus either to calculate or to distribute the promised benefit[,]" with the offers "pivot[ing] on a single, time-specific event").

Yet, the court found the *Nadworny* plan materially distinguishable from plans held not to implicate ERISA in that:

1. A specified group of employees was not *automatically* eligible for the benefit. *See Nadworny*, 405 F. Supp.2d at 133. Rather, the plan administrator was obliged to determine the eligibility of each claimant on a case-by-case basis to ensure that the company did not pay more benefits than promised under the terms of the plan. *See id*. "Indeed, Nadworny's charge against [the defendants] stems from his disagreement with the administrator's determination, based upon the administrator's interpretation of the facts of Nadworny's case and the company's obligations under the agreement, that [the defendants] are not obligated to disburse benefits to Nadworny." *Id*. "That is the very nature of a plan adminstrator's discretionary decision." *Id*.

2. There was no single triggering event for payment of benefits; rather, eligibility could be triggered numerous times during the 12-month effective period of the plan as various individuals resigned from or were discharged by the corporation. *See id*. at 135. That rendered Nadworny's case "meaningfully different from *Fort Halifax*, where the employer was required to pay benefits to all employees immediately after the occurrence of a single event." *Id*.

3. Plan administrators might have to exercise discretion with respect to whether a given employee was eligible, whether he or she was laid off without cause, and whether he or she resigned for good reason. *See id*. at 136. Although the severance agreement defined all of those terms, "the definitions themselves evidence the amount of discretion the administrator might be required to use." *Id*.

The *Nadworny* court deemed the plan before it closer to a "tin parachute" statute at issue in *Simas v. Quaker Fabric Corp. of Fall River*, 6 F.3d 849 (1st Cir. 1993), which the First Circuit held preempted by ERISA, than to the plans found not to implicate ERISA in *Fort Halifax*, *O'Connor*, and *Belanger*. *See Nadworny*, 405 F. Supp.2d at 137-38; *see also, e.g., Simas*, 6 F.3d at 853 (distinguishing Massachusetts "tin parachute" statute from Maine statute held not to be

preempted by ERISA in *Fort Halifax*: "[T]he Maine employer on closing its plant need do little more than write a check to each three-year employee. The Massachusetts employer, by contrast, needs some ongoing administrative mechanism for determining, as to each employee discharged within two years after the takeover, whether the employee was discharged within the several time frames fixed by the tin parachute statute and whether the employee was discharged for cause or is otherwise ineligible for unemployment compensation under Massachusetts law. The 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination.") (footnote omitted).

The key factors that the *Nadworny* court held likened the plan before it to that held to implicate ERISA in *Simas*, and distinguished it from those held not to implicate ERISA in cases such as *Fort Halifax*, *O'Connor*, and *Belanger*, are present in this case as well. The Plan is one of long-standing, automatically renewed from year to year unless terminated, and requires individualized decisions on an ongoing basis as to whether given employees are eligible and qualify for benefits either because they resigned for good reason, as the plaintiff claims he did, or were terminated without cause. Despite the Plan's definitions of these key terms, determination of these matters is not a mechanical process; instead, it entails discretion in finding facts and analyzing whether the plan definitions fit the facts found.

For these reasons, I conclude that the Plan qualifies, as a matter of law, as an ERISA plan. Accordingly, the plaintiff's request in his proposed amended complaint that the court determine the status of the Plan and, if it determines the Plan is not subject to ERISA, entertain three new state-law claims, *see* Proposed Amended Complaint ¶¶ 31, 57-70, is futile. The plaintiff is directed to delete those elements from his amended complaint.

13

## C. Challenge to Estoppel Claim

The plaintiff finally seeks to amend his complaint to add a common-law claim of equitable or promissory estoppel, to the extent that the plan is found a non-ERISA plan, and an ERISA claim of equitable or promissory estoppel, to the extent that the plan is found to be an ERISA plan. *See id.* ¶¶ 71-79.

Because, as noted above, the Plan qualifies as an ERISA plan as a matter of law, any common-law claim of equitable or promissory estoppel is preempted. *See, e.g.*, 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Bellino v. Schlumberger Techs., Inc.*, 753 F. Supp. 391, 392-93 (D. Me. 1990) (plaintiff's state-law claims for breach of contract and promissory estoppel were "related to" the defendant's employee welfare benefit plan and, therefore, preempted by ERISA). The assertion of any such claim therefore is futile.

The plaintiff nonetheless alternatively seeks to estop the defendant(s), pursuant to ERISA, from introducing certain evidence contradicting his claims. *See* Dismiss Opposition at 2. As the plaintiff suggests, *see id.*, the First Circuit has recognized that "[u]nder ERISA, a court's remedial power encompasses an array of possible responses[,]" *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 244 (1st Cir. 2006) (citation and internal quotation marks omitted), including barring a defendant from using certain evidence against a plaintiff, *see id.* at 245, and barring a defendant from asserting, for the first time on judicial review, a new basis for a claim denial, *see Glista v. UNUM Life Ins. Co. of Am.*, 378 F.3d 113, 131-32 (1st Cir. 2004). However, as the defendant points out, these equitable concepts have been employed as remedies with respect to ERISA claims for benefits. *See, e.g., Bard*, 471 F.3d at 244; *Glista*, 378 F.3d at 128; *see also, e.g., Todisco v. Verizon Commc'ns, Inc.*, 497 F.3d 95, 100-01 (1st Cir. 2007)

(noting that *Glista* and *Bard* held "only that when a court is confronted with a claim for benefits pursuant to section 502(a)(1)(B) [of ERISA], the court may invoke certain substantive equitable principles, in certain narrow factual circumstances, in order to adjudicate that claim for benefits"). In the context of his ERISA claim for benefits, the plaintiff may seek relief, *inter alia*, in the form of exclusion of certain evidence. However, he offers no persuasive authority that a stand-alone estoppel claim is cognizable in circumstances such as these. The assertion of such a claim accordingly is futile.

### III. Conclusion

For the foregoing reasons, the Motion To Amend is **GRANTED** to the extent that the plaintiff is permitted to name as defendants TD Banknorth, Inc., a/k/a Banknorth's Change of Control Protection Plan, and Banknorth N.A. and to assert the claims set forth in Counts One and Two of his Proposed Amended Complaint, with respect to which he may seek an equitable remedy barring introduction of certain evidence, and otherwise **DENIED**. The Clerk's Office is **DIRECTED** to strike the amended complaint filed at Docket No. 13, and the plaintiff is **DIRECTED** to file an amended complaint consistent with this ruling, omitting TD Bank and TD Group as defendants, deleting the three new state-law claims, and deleting his stand-alone estoppel claim, on or before August 2, 2010. This disposition **MOOTS** the Motion To Dismiss.

*SO ORDERED.*

Dated this 22nd day of July, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge