UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANDREW SAWYER, )
)
    *Plaintiff* )
)
v. ) No. 2:10-cv-64-GZS
)
TD BANKNORTH, INC., *et al.*, )
)
    *Defendants* )

## *RECOMMENDED DECISION ON MOTIONS FOR JUDGMENT ON THE RECORD*

Both sides in this dispute arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seek judgment on the administrative record. The parties agree that the administrative record as filed (Docket No. 26-1 through 26-5) is "full and complete." Stipulation of the Parties Regarding Discovery and the Administrative Record ("Stipulation") (Docket No. 27) ¶ 1.[1] I recommend that the defendants' motion be granted and the plaintiff's motion denied.

### I. Applicable Legal Standard

The parties agree that "[t]he proper standard of review by which the Court should review the underlying decision of the plan administrator is de novo." Stipulation ¶ 4. Of course, the determination of the appropriate standard of review is a matter for the court. *See, e.g., Biocore, Inc. v. Khosrowshahi*, 80 Fed. Appx. 619, 627 n.4, 2003 WL 22481768, at **6 (10th Cir. Nov. 4, 2003); *Davidson v. Liberty Mut. Ins. Co.*, 998 F. Supp. 1, 8 (D. Me. 1998).

---

[1] When the record for decision is stipulated, the court may decide any significant issues of material fact that may arise. *Tsoulas v. Liberty Life Assurance Co.*, 397 F.Supp.2d 79, 82 (D. Me. 2005).

A denial of ERISA benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[T]he threshold inquiry is whether the Plan language constitutes a clear grant of discretionary authority." *Ballesteros v. Bangor Hydro-Electric Co.*, 497 F.Supp.2d 1, 7 (D. Me. 2007).

Here, the plan, the Banknorth Group, Inc. Change in Control Protection Plan, Amended and Restated as of July 22, 2003 ("the Plan") (Record at 33-41), includes no grant of discretionary authority to determine eligibility or to construe its terms. Accordingly, I agree that a *de novo* review of the plaintiff's claim for benefits is in order. As a result, this court's "task is to independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is [entitled to benefits] within the meaning of the policy. We grant no deference to the administrators' opinions or conclusions." *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010).

"[D]e novo review generally consists of the court's independent weighing of the facts and opinions in [the administrative] record to determine whether the claimant has met his burden of showing [that he is entitled to the benefits he seeks] within the meaning of the policy. While the court does not ignore facts in the record, the court grants no deference to administrators' opinions or conclusions based on those facts." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 518 (1st Cir. 2005) (citation omitted).

## II. Factual Background

At all times relevant to the plaintiff's claim, TD Banknorth Wealth Management Group ("TDWM") was a division of TD Banknorth, N.A., a wholly-owned subsidiary of TD Banknorth

Inc. Record at 17. At all relevant times, Robert Esau was president of TDWM, and four executive vice presidents, Richard Vandale, Robert Boon, James Gribbons, and Gary Robinson, reported to him. *Id*. at 18. Vandale also held the position of chief investment officer for TDWM. *Id*. He had responsibility for managing and overseeing the stock picking and investment portfolio management function for TDWM, which was often referred to as the Investment Group. *Id*.

Six senior vice presidents, including a chief investment strategist and five investment directors, including Kathryn Dion, the plaintiff's direct supervisor, reported to Vandale. *Id*. The plaintiff accepted a position as a portfolio manager for a division of Banknorth Group, Inc. in December 2000. *Id*. at 185. In 2005, TD Bank acquired Banknorth Group, Inc. and became TD Banknorth, Inc. *Id*. at 16. This acquisition constituted a Change in Control under the Plan giving rise to a two-year Period of Protected Employment, as defined in the Plan. *Id*. at 16-17. At all relevant times, the plaintiff was employed as a vice president and portfolio manager IV in the Investment Group. *Id*. at 17. In that position, the plaintiff developed, recommended, and managed investment portfolios for the largest individual and institutional clients of TDWM. *Id*. at 54.

In 2006, Esau and Vandale began to consider a plan to centralize TDWM's investment function in one location (the "centralization plan"). *Id*. at 18. They believed that TDWM would be better able to serve its clients if it created a centralized team of employees, working in one central location rather than 26 different offices, to select stocks and other investments for its clients. *Id*. at 18-19.

In October 2006, Esau and Vandale met with senior management of the Investment Group, including Dion, to present and discuss their preliminary vision of the centralization plan.

*Id*. at 19. The preliminary plan involved the consolidation of certain TDWM offices in a location near Boston. *Id*. Esau and Vandale asked senior management to discuss the preliminary plan with their direct reports who could be affected by it. *Id*. at 19-20.

Dion spoke with each of her direct reports, including the plaintiff, about the centralization plan and its general impact on those employees. *Id*. at 20. She told them that Esau wanted to finalize the plan by January 1, 2007, and that they could expect to hear more definite information about the plan in the near future. *Id*.

In December 2006, TD Bank notified TDWM management that the centralization plan was being placed on hold because the costs associated with the plan were too high. *Id*. TDWM executive management told senior managers to communicate this news to the portfolio managers. *Id*. Dion told her direct reports, including the plaintiff, that the consolidation plan had not been finalized and would not be finalized by the January 1, 2007, target date. *Id*.

In January 2007, Esau and Vandale began to develop an alternative "hybrid" plan that would consolidate at TDWM's existing office in Concord, New Hampshire, only those investment functions relating to institutional and non-taxable accounts. *Id*. On February 5, 2007, Esau sent an e-mail to TDWM's executive and senior management, including Dion, confirming that TD Bank had not approved the centralization plan and that TDWM was now pursuing an alternative reorganization plan, a copy of which was attached to the e-mail. *Id*. at 21.

On January 29, 2007, the plaintiff contacted Karen Rosenau, Senior Vice President of Human Resources for TD Bank. *Id*. at 21. During that telephone conversation, the plaintiff told Rosenau that he had learned several months earlier that he might be required to relocate to another office, and he felt anxious because the relocation plans still had not been finalized. *Id*.

He also told Rosenau that he believed that the uncertainty surrounding the potential relocation had created an unhealthy work environment, and that he wanted to leave TDWM with a severance package. *Id*. Rosenau informed the plaintiff had he was not eligible for a severance package because his position had not been eliminated, his salary had not been reduced, and his position had not been relocated to a workplace over 50 miles from his current work location. *Id*.

On February 8, 2007, the plaintiff submitted a letter of resignation to Dion. *Id*. In the letter, the plaintiff stated that he would continue to work until February 23, 2007 and that, although he had been told by Rosenau that he was not yet eligible for a severance package, he was in fact entitled to receive one, including one year's salary paid in advance, full vesting of TD Banknorth stock options, and full payout of TD Banknorth restricted stock units. *Id*. at 21-22. He offered to sign a one-year non-compete letter, to discontinue communications with TDWM employees, and to sign any necessary release. *Id*. at 22. He also stated that he had met with an attorney and been advised that he might have grounds for legal action, which he reserved the right to take against TDWM if his claims were not resolved to his satisfaction. *Id*.

TD Bank's response to this letter was provided by a letter dated February 20, 2007, from Jonathan Shapiro, Esq. *Id*. Shapiro denied that TD Banknorth or any of its officers or senior management had notified the plaintiff that his job was being relocated, that his position was or would be eliminated, that his employment was or would be terminated, or that he was eligible for a severance package. *Id*.

On February 21, 2007, the plaintiff sent an e-mail to Rosenau stating that he had received word that his "position has been eliminated in Portland Maine and has been relocated to Concord NH. This would seem to be the trigger event for the severance package that we have previously discussed." *Id*. Rosenau responded by e-mail on February 22, 2007, stating, in relevant part:

> After anyone resigns, the Company can decide whether or not to refill a position or relocate a position. Your job, with you in it, was not relocated. If a decision was made to fill your position in another location after you had resigned, it does not trigger any Change in Control Severance payment.

*Id*. at 22-23.

On March 20, 2007, Rosenau sent the plaintiff a letter in which she provided the plaintiff with copies of the Plan and the Summary Plan Description ("SPD") and described the process to be followed if the plaintiff wanted to make a claim for benefits under the Plan. *Id*. at 23. The plaintiff apparently did so. *Id*. at 1-32.

### III. Discussion

The operative complaint in this action alleges in Count One that the plaintiff is entitled to recover "severance benefits as set forth in the Plan[.]" Plaintiff's First Amended Complaint ("Complaint") (Docket No. 18) ¶ 46. The second count alleges that the defendants violated 29 U.S.C. § 1022 by failing to provide him with a copy of the Plan or the SPD and that this failure resulted in damages including the severance benefits. *Id.* ¶¶ 47-50. The complaint also includes a demand for equitable relief, which is not presented as a separate count, but seeks an "equitable estoppe[l]" preventing the defendants from "introducing any evidence that [the plaintiff] failed to comply with the specific language of the [P]lan and . . . introducing evidence that any of the parties involved in the negotiations had any knowledge of the existence and/or contents of the [P]lan." *Id*. ¶ 59. The plaintiff also appears to seek financial damages as part of this demand for "equitable remedy." *Id*. at 10-11.

### A. Count One

The defendants contend that the plaintiff voluntarily resigned his position, making him ineligible for the severance benefits available under the Plan. Defendants' Motion for Judgment

on the Administrative Record ("Defendants' Motion") (Docket No. 35) at 13. The relevant section of the Plan provides as follows:

> Any Eligible Employee whose employment with the Group is terminated during a Period of Protected Employment (x) by the Company without Cause or (y) by the Eligible Employee for Good Reason shall be entitled to (i) payment of all compensation and benefits accrued through the date of termination (including, but not limited to, base salary and Incentive Compensation) and (ii) a Severance Payment (to be paid in lump sum within twenty (20) business days after the date of termination of employment) and (iii) Severance Period Coverage.

Record at 24. "Good Reason" is defined with respect to the plaintiff as:

> 1) Imposition of any reduction in base salary or aggregate benefits. 2) Required relocation of principal place of employment to a location (x) more than 50 miles from residence or (y) if prior principal place of employment was more than 50 miles from residence, more distant from residence than prior principal place of employment.

*Id.* at 25.

The plaintiff's February 8, 2007, letter to Dion includes the following relevant statements:

> I am writing to inform you of my intention to leave TD Banknorth Wealth Management ("TDWM") effective February 23, 2007. I began this process of transitioning to a new job based on numerous written and verbal communications that my job was being relocated to the greater-Burlingon Massachus[]etts area by Bob Esau, President of TDWM, Rick Vandale, CIO and EVP, and other Senior Investment Committee members. It is my understanding that this employee relocation is being undertaken as part of a much larger company-wide reduction in employees as articulated by Andrew Greene in early 2006 and recently by Bharat Masrani.
>
> I personally believe that every portfolio manager at TDWM and all of the Senior Investment Committee members fully understood the plans articulated by Bob Esau and Rick Vandale. Their plan was to centralize the investment staff, place some of the other investment Officers into wealth advisor positions, and to terminate with severance packages the remaining Investment Officers. It is my belief that management offered me a severance package as part of their effort to reduce the workforce.

7

> Acting upon that offer I have found alternative employment consistent with the time schedule previously defined by the company.
> In a recent telephone conversation with human resources I have been told that I am not yet eligible for the severance package. While there is a delay in the elimination of my job it was clearly believed by most employees and members of management that the reorganization would be completed by December 31, 2006. Due to no fault of my own this deadline has not yet been met.

*Id*. at 57.

The plaintiff takes the position that the "plain language" of the Plan requires that he recover the severance package at issue, because he had "good reason" to end his employment. Plaintiff's Motion for Judgment on the Record ("Plaintiff's Motion") (Docket No. 34) at 12. However, there is no evidence in the administrative record that the defendants either reduced his base salary or aggregate benefits or that they required him to relocate at all, much less more than 50 miles from his residence. His February 8, 2007, letter states his "belief" that his job was going to be eliminated or moved to Burlington, Massachusetts, but there is no question that neither event had occurred at the time he wrote letter. The letter itself acknowledges as much.

The plaintiff bases his argument on the assertion that his position "in Portland was eliminated, and . . .it had been downgraded and relocated to Concord, N.H. . . . while he was still in it." *Id*. at 13-14. But, the record evidence establishes that the plaintiff was informed of this intended action on February 20, 2007,[2] 12 days after he submitted his resignation and only three days before that resignation took effect. *Id.* He cites no authority for the necessary legal underpinning of his argument, that an employer may not relocate or recharacterize a particular employee's position without incurring an obligation to pay severance benefits under the language of the Plan unless it waits until the actual effective date of that employee's resignation has

---

[2] The plaintiff's motion states that he was so informed on February 20, 2007, but his e-mail to Rosenau dated February 21, 2007, states that he "received word that my position has been eliminated in Portland[,] Maine" "[t]oday." Record at 63. The discrepancy has no bearing on my analysis or conclusions.

passed. Here, it was the plaintiff's resignation that gave the employer the opportunity to change his position without having to consider the rights of an incumbent employee.

The plaintiff maintains that language in the SPD requires that the language of the Plan be interpreted in the manner that he proposes. Plaintiff's Motion at 15. Specifically, he relies on the following passage:

> 6. During the "Period of Protected Employment," what events will trigger benefits for me under the terms of the Plan?
>
> An Eligible Employee who loses his or her job without "cause" . . . or who leaves the Company for "good reason" will be entitled to severance pay and continued participation in the Company's health and dental plans for periods listed in the Plan documents. A "good reason" for terminating your employment with the Company is defined in the Plan documents and varies depending upon your Employee Level. Good reason may include such changes in your relationship with the Company as a reduction in pay or benefits, the relocation of your work site or a reduction in your duties or responsibilities. In making the determination whether you have "good reason," the Plan Administrator will make reference to the salary, benefits, location or duties in effect on the date of the change-in-control or the date your employment ends, whichever is more favorable to you.

Record at 46-47.

The plaintiff contends that on "the date [his] employment end[ed]," February 23, 2007, the location of his work site changed. Plaintiff's Motion at 15. But, this argument ignores the fact that the plaintiff's employment ended before any change of location for his position took effect. Any relocation of the work site was not a relocation of the plaintiff's ("your") work site. The only relocation of the position, and the only possible reduction in the duties or responsibilities of the position, took place only after the plaintiff left it.[3]

---

[3] This interpretation is supported by the language of Schedule I to the Plan, which uniformly refers, under the heading "Good Reason," to "[r]equired relocation of principal place of employment." Record at 40. The plaintiff was not required to relocate at all.

9

Neither the language of the Plan nor that of the SPD upon which the plaintiff relies may reasonably be read to impose on the defendants a substantial financial penalty for announcing on February 20, 2007, rather than on February 24, 2007, that the position from which the plaintiff had already resigned would be transferred, after he left, to another location. The defendants are entitled to judgment on Count One of the amended complaint.

## B. Count Two

The plaintiff apparently contends that the defendants' asserted failure to provide him in hand with copies of the Plan and the SPD entitles him to the severance package and other financial relief that he seeks. Plaintiff's Motion at 7-12. The defendants assert that both were "readily available" to the plaintiff on a website to which he was directed, so there was no statutory violation. Defendants' Motion at 21-23. They also argue that the question of whether the plaintiff received either document is irrelevant because he "acknowledges that he was told by TD Bank that he was not eligible for severance benefits before he voluntarily resigned his position . . . and therefore . . . could not have relied on any information that he would have obtained from the SPD in making the decision to resign." *Id*. at 21.

The statute cited by both sides provides, in relevant part: "A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title." 29 U.S.C. § 1022(a). Section 1024 in turn provides, again in relevant part: " Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows: (1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description[.] . . . (2) The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust

agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary[.]" 29 U.S.C. § 1024(b).

The problem for the plaintiff here is that, even if the court assumes *arguendo* that availability of the Plan and the SPD on a website brought to the attention of the plaintiff was insufficient under section 1022,[4] or that, as the plaintiff suggests, Plaintiff's Motion at 10, they were not on the website at all,[5] the remedies he seeks are not available for violation of sections 1022 and 1024.

As the Seventh Circuit has held:

> An employer's procedural violations of ERISA [here, failure to comply with ERISA's reporting provisions] entitle employees to monetary relief only in exceptional cases. Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted.

*Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991) (citations omitted). Where there is no evidence of active concealment of the severance policy at issue (indeed, in *Kreutzer*, the employer notified "employees where they could find the plan") and no evidence of unfair administration of that policy, the employee is not entitled to an award of benefits as a remedy for violation of ERISA's notification requirements. *Id.* at 744. *See also Del Rio v. Toledo Edison Co.*, 130 Fed. Appx. 746, 751, 2005 WL 1001430, at **4 (6th Cir. Apr. 29, 2005) (assuming that defendant violated § 1024(b) by failing to provide plaintiff with copies of plan documents,

---

[4] *But see* 29 C.F.R. § 2520.104b-1(c) ( setting conditions under which ERISA documents may be furnished through electronic media).

[5] The plaintiff's contentions that "there is no evidence anywhere in the record that establishes that [the plaintiff] had access to the SPD even on the internet[,]" "there is no proof in the record that the SPD was provided following the first amendment and commenced period of protected employment in March 2005," and that the defendants "didn't provide any documentary proof" that the SPD was on the website, Plaintiff's Motion at 10, appear to place the burden of proof on the defendants, when in fact he bears the burden of proof on Count Two of his amended complaint. *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 947 (8th Cir. 1999); *Adams v. Western Conference of Teamsters Pension Plan*, 484 F.Supp. 933, 934 (D. Utah 1979).

plaintiff does not have an ERISA remedy; "[n]othing in [ERISA's civil enforcement provision] suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information." (citation omitted)); *Villers v. Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund*, 901 F. Supp. 1111, 1116 (S.D. W.Va. 1995) (violations of section 1024(b)(1) do not justify relief absent showing of bad faith, active concealment, or detrimental reliance; citing cases). Neither of the only two cases cited by the plaintiff in discussing Count Two, *Simeon v. Mount Sinai Med. Ctr.*, 150 F.Supp.2d 598, 602-04 (S.D.N.Y. 2001), and *Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir. 1993), Plaintiff's Motion at 11, suggests otherwise. Indeed, *Lee* holds otherwise with respect to monetary damages. 991 F2d. at 1011.

Here, the plaintiff does not contend that the defendants acted in bad faith or actively concealed the provisions of the Plan or the SPD. To the extent that his assertions that "had [Rosenau] provided the Plan or SPD, it absolutely would have made a difference in that it would have allowed him to make a well-informed decision," Plaintiff's Motion at 9, and that he "was prejudiced by the failure to provide the SPD in that he relied on the representations of the management of TDWM concerning severance benefits; whereas, if he had been in possession of the SPD, he would have been able to make a well-informed decision based upon the actual plan," *id*. at 11-12, are intended as evidence of detrimental reliance, despite the absence from the record of any affidavit supporting these assertions, they are insufficient.

Detrimental reliance, under the circumstances of this case, could only be shown by a sworn assertion that the plaintiff would not have submitted his resignation had he had copies of these documents at the relevant time. However, such an assertion would be at odds with his contention, whether or not it is erroneous, that the plain language of the Plan and the SPD

12

entitled him to severance benefits as of the effective date of his resignation. In addition, his letter of resignation acknowledges that "human resources" had told him that he was not eligible for the severance package. Record at 57. The plaintiff cannot pick and choose which of directly conflicting oral representations on which to rely in order to establish detrimental reliance, even assuming that each person who made such representations had authority to bind the defendants.

The defendants are entitled to judgment on Count Two. *See generally Weinreb v. Hospital for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 171-72 (2d Cir. 2005) (where SPD not furnished but evidence showed claimant had actual knowledge of requirement at issue, any error was necessarily harmless); *accord, Ballesteros v. Bangor Hydro-Elec. Co.,* 497 F.Supp.2d at 9.

### C. Equitable Relief

It is not clear from the amended complaint whether the plaintiff seeks equitable relief separately or merely on each of the two numbered counts. This discussion of the availability of such relief is intended to address either eventuality.

A claim of equitable estoppel in the ERISA context, Complaint ¶ 59, based on the allegation that certain of the defendants' employees told the plaintiff that his job would be moved to a location more than 50 miles away and that he would be provided with a severance package, *id*. ¶ 52, and also on the allegation that the plan administrator did not adequately investigate the plaintiff's claims, Plaintiff's Motion at 19-21, requires evidence of not only the four basic elements of promissory estoppels, promise, reliance on the promise, injury caused by the reliance, and an injustice if the promise is not enforced, "but facts sufficient to satisfy an extraordinary circumstances requirement as well." *Weinreb*, 404 F.3d at 172-73; *Engers v.*

*AT&T*, 428 F.Supp.2d 213, 239 (D.N.J. 2006) (clarified on other grounds, 2006 WL 3359722 (D.N.J. Nov. 20, 2006).

The amended complaint shows that the plaintiff is aware of these requirements, as it alleges promises by Dion and other unidentified "representatives of Banknorth," Complaint ¶¶ 52-53; reliance, *id*. ¶ 55; injury, ¶ 56; injustice, *id*. ¶ 56, although the injustice alleged is identical to the injury alleged; and extraordinary circumstances, *id*. ¶ 58. However, his motion and the supporting "Recitation of Facts" do not establish all of the necessary elements as a matter of fact. A careful reading of the Recitation reveals no allegation that the plaintiff was promised a severance package should he choose to resign, or even if his job was eliminated or relocated, and neither eventuality had occurred at the time he submitted his resignation.[6]

Nor could the plaintiff's alleged reliance on these "promises" have been reasonable in light of the information he acknowledges he received from Rosenau before he submitted his resignation, to the effect that he was not then eligible for a severance package. Perhaps most important is the lack of any evidence of extraordinary circumstances. Indeed, the term does not even appear in the plaintiff's motion or in his opposition to the defendants' motion.

The following do not constitute extraordinary circumstances in this context: ERISA reporting errors or disclosure violations, variations between a plan and its SPD, or omissions in disclosure documents. *Gashlin v. Prudential Ins. Co. of Am. Retirement Sys. for the U.S. Employees & Special Agents*, 286 F.Supp.2d 407, 420 (D.N.J. 2003). The Third Circuit requires evidence of affirmative acts of fraud or similarly inequitable conduct by an employer, or misrepresentations made by an employer over an extended course of dealing. *Id.* Here, the

---

[6] This discussion assumes that oral promises could have modified the terms of the written Plan. That assumption is not consistent with reported case law. *See, e.g., Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 856 (7th Cir. 1997); *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir. 1995); *Watson v. Consolidated Edison*, 645 F.Supp.2d 291, 296 (S.D.N.Y. 2009).

plaintiff does not allege fraud or similarly inequitable conduct by the defendants. His claim of disclosure violations in Count Two cannot provide the basis for equitable relief. His allegations in Count One do not establish that the alleged misrepresentations made to him by Dion and unidentified other employees bound the defendants, let alone that they were made over an extended course of dealing.

A plaintiff's "particular vulnerability" may also rise to the level of extraordinary circumstances, *Engers*, 428 F.Supp.2d at 239, but the plaintiff makes no claim of such vulnerability, and nothing in the record suggests that he was any more vulnerable than any other employee in similar circumstances. Finally, at the only time that the plaintiff contends that he made inquiries about the availability of a severance package, *see id.* at 240, he admits that he was told that he was not eligible. Plaintiff's Appendix/Recitation of Facts at 5-6.

The plaintiff has not established any entitlement to equitable relief. To the extent that this relief is sought independently of Counts One and Two, the defendants are entitled to judgment on this claim as well.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion for judgment be **GRANTED** and that of the plaintiff **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection*

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 12th day of April, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge